# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Stephen Tucker, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | Nos. 631 – 642 C.D. 2023 |
| v. | : | |
| | : | Argued: June 6, 2024 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                                    **FILED:  February 24, 2025**

Stephen Tucker (Tucker) has petitioned this Court to review multiple adjudications of the Unemployment Compensation Board of Review (Board), which reversed many but not all of the referee's underlying decisions.  The Board held that Tucker was ineligible for unemployment compensation and related benefits under the Unemployment Compensation Law (UC Law).[1]  In these consolidated appeals, Tucker contends that the Board erred because no party had appealed his eligibility to the Board.  We reverse in part, vacate in part, and remand.

## I. BACKGROUND[2]

Tucker worked seasonally for H&R Block, earning $27,461 in 2019.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

[2] We review the record in the light most favorable to the prevailing party and give that party the benefit of all logical and reasonable inferences.  *Begovic v. Unemployment Comp. Bd. of Rev.*, 234 A.3d 921, 929 n.6 (Pa. Cmwlth. 2020).  We may also state undisputed facts that we glean from the lead record at Docket No. 2021325372-RO (372-RO).

Notes of Testimony (N.T.), 11/12/21, at 17-18, 21. He also operated a sideline business selling collectibles, which generated $9,862 in net profit that year. *Id.* at 19. When H&R Block closed due to COVID-19 in March 2020, Tucker applied for unemployment benefits.

Initially, Tucker received various unemployment benefits. However, the Department of Labor and Industry's (Department) UC Service Center later determined Tucker was ineligible under Section 402(h) of the UC Law, 43 P.S. § 802(h), because he was self-employed, resulting in multiple overpayment determinations.[3] Tucker appealed to the referee.[4]

Following a hearing, the referee concluded that Tucker had established the "sideline business" exception to Section 402(h) of the UC Law, 43 P.S. § 802(h).[5] Referee's Decision, Docket No. 372-RO, 11/16/21, at 3. Accordingly, the referee reversed the UC Service Center determination, finding Tucker eligible for regular UC benefits. *Id.* The referee nonetheless reduced Tucker's benefits based on prorated earnings from his business. *Id.* Based on the reduction in regular UC benefits, the referee later found that Tucker had received a non-fault overpayment. *See* Referee's Decision, Docket No. 2021325397-RO (397-RO), 11/16/21, at 2 (finding a $154 overpayment).

Based on Tucker's eligibility for regular UC benefits, the referee also

---

[3] Section 402(h) of the UC Law, 43 P.S. § 802(h), generally provides that a self-employed person is not entitled to UC benefits. In Department lingo, an ineligible claimant who receives benefits is "overpaid."

[4] "A referee is an individual employed by the Commonwealth of Pennsylvania and appointed to conduct hearings on appeals from benefits determinations under the UC Law." *Quigley v. Unemployment Comp. Bd. of Rev.*, 263 A.3d 574, 577 n.3 (Pa. 2021) (citations omitted).

[5] This exception applies "where the self-employment began prior to termination from full-time employment; has continued without substantial change after the full-time employment was terminated; and was not the primary source of the claimant's livelihood. In that case, the claimant is eligible for [UC] so long as she is available for full-time work." *Crocker v. Unemployment Comp. Bd. of Rev.*, 63 A.3d 496, 499 (Pa. Cmwlth. 2013) (*en banc*).

found Tucker eligible for Federal Pandemic UC (FPUC) benefits,[6] as well as Lost Wages Assistance (LWA) benefits.[7] *See* Referee's Decision, Docket No. 2021325401-RO (401-RO), 11/16/21, at 3; Referee's Decision, Docket No. 2021325409-RO (409-RO), 11/16/21, at 2.

Tucker appealed to the Board *only* the calculation of his benefits and whether he had exhausted his regular UC benefits.[8]  Notice of Appeal, 11/24/21, at 1. Tucker's brief to the Board likewise did not challenge the referee's decision regarding his eligibility.  *See, e.g.*, Tucker's Br. to Bd., 10/14/22, at 3 (emphasizing that the referee "*properly* found" and "properly determin[ed]" that Tucker was eligible (emphasis in original)).

The Department did not appeal any of the referee's decisions, including the decisions at docket numbers 401-RO and 409-RO.  Importantly, at docket number 401-RO, the referee specifically reasoned that Tucker was eligible for regular UC benefits and, therefore, eligible for FPUC benefits.  Referee's Decision, Docket No. 401-RO at 3, 5 (holding Tucker "is eligible for" benefits).  Similarly, at docket number 409-RO, the referee held that Tucker was eligible for regular UC benefits

---

[6] Federal Pandemic UC (FPUC) benefits are provided under Section 2104 of the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act), 15 U.S.C. § 9023.

[7] Lost Wages Assistance (LWA) benefits were authorized by presidential memorandum executed on August 8, 2020.

[8] Specifically, Tucker appealed the following 13 UC Service Center determinations to the referee, which were docketed at docket numbers 372-RO, 2021325397-RO (397-RO), 401-RO, 409-RO, 2021325413-RO (413-RO), 2021325418-RO (418-RO), 2021325422-RO (422-RO), 2021325425-RO (425-RO), 2021325429-RO (429-RO), 2021325432 (432-RO), 2021304705-RO (705-RO), 2021304707-RO (707-RO), and 2021304709-RO (709-RO). N.T., 11/12/21 (unpaginated cover page) & 1.  However, the 425-RO docket number was "invalidated" for unknown reasons.

The referee issued 12 decisions, which found Tucker eligible for benefits but nevertheless recalculated the amount of benefits, further finding that Tucker had been overpaid certain benefits. Tucker appealed 8 of those referee decisions to the Board: docket numbers 372-RO, 397-RO, 413-RO, 418-RO, 422-RO, 425-RO, 429-RO, and 705-RO.  Tucker did not appeal the decisions at 401-RO, 409-RO, 707-RO, and 709-RO.  The Department did not appeal any decision.

and, therefore, eligible for LWA benefits. Referee's Decision, Docket No. 409-RO at 2 (finding Tucker "eligible for benefits").

Upon review, the Board reversed the referee, holding that Tucker was ineligible for benefits because he had failed to establish the sideline business exception. *See* Bd.'s Decision, Docket No. 2021329866-BR, 1/10/23, at 2. The Board issued additional decisions premised upon this core holding and requiring Tucker to repay benefits. Tucker timely appealed all the Board's decisions to this Court, which consolidated the appeals.[9] Order, 8/28/23.

## II. ISSUES

Tucker raises four issues. Initially, he alleges that the Board improperly altered the scope of his appeal by resolving an issue not raised by him or his prior employer. Tucker's Br. at xii.[10] Second, Tucker contends that the Board erred by holding he "was not a full-time employee of H&R Block." *Id.* Third, Tucker asserts the Board erred by holding that his "self-employment was a primary source of his livelihood." *Id.* at xiii. Last, Tucker maintains that the referee erred by holding that he had not exhausted his regular UC benefits. *Id.*

---

[9] Although only 8 referee decisions were before the Board, the Board issued 12 decisions at docket numbers 2021329865-BR, 2021329866-BR, 2021329867-BR, 2021329868-BR, 2021329869-BR, 2021329870-BR, 2021329872-BR, 2022006719-BR, 2022006720-BR (720-BR), 2022006721-BR (721-BR), 2022006722-BR (722-BR), and 2022006723-BR (723-BR). The Board's 12 decisions reversed 10 of the referee's decisions, including the unappealed decisions at docket numbers 401-RO, 409-RO, 707-RO, and 709-RO. The Board affirmed in part and modified the referee's decision at docket number 397-RO. The Board affirmed the referee's decision at 413-RO. Tucker then appealed all 12 of the Board's decisions to this Court.

[10] Tucker's brief does not strictly comply with Pa.R.A.P. 2135, as it sidesteps the 30-page limit by using Roman numerals for paginating matters that are subject to the word and page-count limitations. *See* Pa.R.A.P. 2135. For example, Tucker's Statement of Issues is not considered a "supplemental matter" that would be excluded from the word count limitations. *See* Pa.R.A.P. 2135(b); *see also* Pa.R.A.P. 2111; 2116 Note. Nevertheless, Tucker's brief is under 14,000 words.

4

## III. DISCUSSION[11]

In support of his first issue, Tucker asserts that the Board erred by considering *sua sponte* whether he was eligible for benefits. *Id.* at 10-11. According to Tucker, because he did not appeal the referee's decisions finding him eligible, the Board lacked jurisdiction to reverse those decisions. *Id.* at 11-12. In response, the Board contends that Tucker was on notice that the issue of "his eligibility was before the referee and the Board." Bd.'s Br. at 7. In the Board's view, because Tucker's eligibility was always at issue, he was not prejudiced.[12] *Id.*

An aggrieved party or the Department may appeal a referee's decision to the Board within 21 days. Section 502(a) of the UC Law, 43 P.S. § 822(a); 34 Pa. Code § 101.90(a).[13] If no one appeals the referee's decision, then the decision

---

[11] We must affirm the Board's decision "unless we determine that[] it violates the [petitioner's] constitution[al] rights; it is not in accordance with law; it was reached in violation of applicable administrative procedure; or any fact necessary to the decision is not supported by substantial evidence." *U.S. Steel Corp. (USX Clairton Works) v. Unemployment Comp. Bd. of Rev.*, 858 A.2d 91, 99 (Pa. 2004); 2 Pa.C.S. § 704.

[12] The parties dispute the impact of our Supreme Court's decision in *Quigley*, which considered the Board's authority to raise the issue of a claimant's eligibility for benefits *sua sponte*, when the claimant has appealed a referee's decision on other grounds. We need not examine *Quigley*'s significance in this case.

[13] When "an appeal from the determination . . . of the [D]epartment is taken, a referee shall, after affording the parties and the [D]epartment reasonable opportunity for a fair hearing, affirm, modify, or reverse such findings of fact and the determination . . . . The parties and their attorneys or other representatives of record and the [D]epartment shall be duly notified of the time and place of a referee's hearing and of the referee's decision, and the reasons therefor, which shall be deemed the final decision of the [B]oard, unless an appeal is filed therefrom . . . ." Section 502(a) of the UC Law, 43 P.S. § 822(a). "Within 21 days after the decision of a referee, the claimant, the Department or an affected employer may file an application for a further appeal with the Board." 34 Pa. Code § 101.90(a).

Prior to 1951, the Department lacked statutory "authority to appeal from the decision of the referee to the" Board. *Gensey v. Unemployment Comp. Bd. of Rev.*, 69 A.2d 176, 176-77 (Pa. Super. 1949) (*per curiam*) (holding that the Department's "appeal was unauthorized" "in the absence of statutory authority"); *see also Dep't of Lab. & Indus., Bureau of Emp. & Unemployment Comp. v. Unemployment Comp. Bd. of Rev.*, 67 A.2d 114, 116 (Pa. 1949) (holding no statutory authority exists for the Department to appeal a Board decision to the appellate court). In response, the Legislature

becomes "the final decision of the [B]oard . . . ." Section 502(a) of the UC Law, 43 P.S. § 822(a). Further, failure to timely appeal a decision deprives the Board of jurisdiction to consider the matter, which we may *sua sponte* address. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008); *Darroch v. Unemployment Comp. Bd. of Rev.*, 627 A.2d 1235, 1237 (Pa. Cmwlth. 1993).

Here, neither Tucker, any other aggrieved party, nor the Department appealed the referee's decisions at 401-RO, 409-RO, 707-RO, and 709-RO within 21 days. Accordingly, the Board lacked jurisdiction to consider these decisions. *See Hessou*, 942 A.2d at 197-98; *Darroch*, 627 A.2d at 1237; Section 502(a) of the UC Law, 43 P.S. § 822(a).

Further, it is long settled that unappealed decisions cannot be collaterally challenged. *Unemployment Comp. Bd. of Rev. v. Ferraro*, 348 A.2d 753, 755 (Pa. Cmwlth. 1975) (explaining that the "facts determinative of eligibility were directly decided in the earlier claim and cannot be attacked"); *Turner v. Unemployment Comp. Bd. of Rev.*, 60 A.2d 583, 585 (Pa. Super. 1948) (holding that a petitioner's failure to appeal the Department's decision precluded the petitioner "from thereafter challenging the facts set forth in such" decision); *Gollier v. Unemployment Comp. Bd. of Rev.*, 56 A.2d 351 (Pa. Super. 1948); Section 509 of the UC Law, 43 P.S. § 829.[14]

---

amended the UC Law to permit the Department to appeal the referee's decisions to the Board and to the appellate court. Section 502 of the UC Law, 43 P.S. § 822 Note; *accord* Act of September 29, 1951, P.L. 1580; Act of July 10, 1980, P.L. 521; *see also* House Legis. J., July 30, 1951, at 4141-42 (explaining that the purpose of the Act of September 29, 1951 was, *inter alia*, to confer "upon the [D]epartment the right of appeal"); House Legis. J., Oct. 2, 1951, at 5704 (same).

[14] "Any decision made by the [D]epartment or any referee or the [B]oard shall not be subject to collateral attack as to any application claim or claims covered thereby or otherwise be disturbed, unless appealed from." Section 509 of the UC Law, 43 P.S. § 829.

6

For example, in *Gollier*, the Department denied benefits, reasoning that the claimant had quit voluntarily without good cause. *Gollier*, 56 A.2d at 351. The claimant appealed to the referee, who reversed the Department, and no one appealed the referee's decision. *Id.* One year later, the claimant again applied for benefits "based on the same separation from employment as that involved in the first application." *Id.* The Department again denied benefits on the same grounds, the claimant appealed to the referee, and a different referee affirmed the Department. *Id.* The claimant eventually appealed to the *Gollier* Court, which held that the unappealed referee's decision was "final and decisive of the questions involved in the appeal" and therefore binding on the Department. *Id.* at 352.

Subsequently, in at least two unreported cases, this Court has relied on this precedent to hold that a referee's prior decision was final because the claimant had not timely appealed it. *Darr v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2007 C.D. 2009, filed Aug. 25, 2010), 2010 WL 9514629.[15] The referee's prior decision, the *Darr* Court held, precluded the claimant from collaterally challenging any findings within that decision. *Darr*, 2010 WL 9514629, at *2; *accord Cloma v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1057 C.D. 2023, filed Dec. 20, 2013), 2013 WL 6733052, at *2 (same).

Instantly, the referee reversed the UC Service Center and held that Tucker was eligible for state UC benefits because he had proven the sideline business exception. The Department received notice of the reversal but did not appeal, including those decisions at 401-RO and 409-RO, which were premised upon Tucker's eligibility. *See* Section 502(a) of the UC Law, 43 P.S. § 822(a); 34 Pa. Code § 101.90(a). These decisions are binding and "shall not be subject to collateral attack

---

[15] We may cite to non-precedential decisions of this Court for their persuasive value. Pa.R.A.P. 126(b).

7

. . . or otherwise be disturbed . . ." *See* Section 509 of the UC Law, 43 P.S. § 829; *Ferraro*, 348 A.2d at 755; *Turner*, 60 A.2d at 585. Thus, the Board may not issue decisions that disturb the referee's eligibility determination. Identical to *Gollier*, in which the Department failed to appeal an adverse referee's decision, the Department is bound by the decisions at 401-RO and 409-RO. *See Gollier*, 56 A.2d at 352; *accord Darr*; *Cloma*.

### IV. CONCLUSION

In sum, we reverse in part and vacate in part the Board's decisions. We vacate the Board's decisions at 720-BR, 721-BR, 722-BR, and 723-BR, which respectively considered the referee's decisions at docket numbers 409-RO, 401-RO, 709-RO, and 707-RO, for lack of jurisdiction as no aggrieved party appealed them within 21 days. *See Hessou*, 942 A.2d at 197-98; Section 502(a) of the UC Law, 43 P.S. § 822(a).

Importantly, the referee's decisions at docket numbers 401-RO and 409-RO were premised upon Tucker's eligibility for regular UC benefits. These decisions are final, binding on all parties, and not subject to collateral attack. Section 509 of the UC Law, 43 P.S. § 829; *see, e.g.*, *Gollier*, 56 A.2d at 352. We must therefore reverse the Board to the extent that it addressed and denied Tucker's eligibility.

Accordingly, we reverse the Board's decision at 866-BR, which considered and reversed the referee's decision at 372-RO. For the same reasons, we also reverse in part and vacate in part the Board's decision at 867-BR, which considered the referee's decision at 397-RO. That decision is vacated and remanded for the Board to consider whether Tucker received a non-fault overpayment of regular UC benefits as reasoned by the referee.

8

Finally, the Board's error on the issue of Tucker's eligibility requires that we also reverse in part and vacate the Board's remaining decisions, which consider Tucker's eligibility for various supplemental and extended benefits. Because the Board determined that Tucker was ineligible for benefits, it did not address whether Tucker had exhausted his regular UC benefits. *See* Tucker's Br. at xiii. We therefore remand for the Board to consider this issue.

_____

**LORI A. DUMAS, Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Stephen Tucker, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | Nos. 631 – 642 C.D. 2023 |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

**O R D E R**

AND NOW, this 24th day of February, 2025, we REVERSE in part and VACATE in part the Unemployment Compensation Board of Review's (Board) decisions dated January 10, 2023, at docket numbers 2021329865-BR, 2021329866-BR (866-BR), 2021329867-BR (867-BR), 2021329868-BR, 2021329869-BR, 2021329870-BR, 2021329872-BR, 2022006719-BR, 2022006720-BR (720-BR), 2022006721-BR (721-BR), 2022006722-BR (722-BR), and 2022006723-BR (723-BR), as set forth below:

1. We VACATE the Board's decisions at 720-BR, 721-BR, 722-BR, and 723-BR, which respectively considered the referee's decisions at docket numbers 2021325409-RO, 2021325401-RO, 2021304709-RO, and 2021304707-RO, for lack of jurisdiction, as no aggrieved party appealed them within 21 days. *See Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008); Section 502(a) of the Unemployment Compensation (UC) Law, 43 P.S. § 822(a), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

2. The referee's decisions at 2021325409-RO and 2021325401-RO were premised upon Stephen Tucker's (Tucker) eligibility for regular UC benefits.

As no party appealed these decisions, they are binding on the Board.  *See Gollier v. Unemployment Comp. Bd. of Rev.*, 56 A.2d 351, 352 (Pa. Super. 1948); Section 509 of the UC Law, 43 P.S. § 829.

   a. We therefore REVERSE the Board's decision at 866-BR, which considered and reversed the referee's decision at 2021325372-RO, because the Board wrongly denied Tucker's eligibility for state UC benefits.

   b. We therefore REVERSE in part and VACATE in part the Board's decision at 867-BR, which considered the referee's decision at 2021325397-RO.  It is REVERSED to the extent the Board relied on its decision at 866-BR.  However, it is VACATED as to the amount of the non-fraud overpayment of UC benefits received by Tucker.

   c. We therefore REVERSE in part and VACATE the remaining decisions of the Board.  These decisions are REVERSED to the extent the Board determined that Tucker was ineligible for state UC benefits.  However, these decisions are merely VACATED to the extent the Board determined that Tucker had not exhausted his state UC benefits.

We further REMAND this matter for the Board to reexamine whether Tucker received an overpayment of regular UC benefits and to consider Tucker's claim that he had exhausted his regular state UC benefits.

   Jurisdiction relinquished.

_____
**LORI A. DUMAS, Judge**